CHARLES W. STONE, Appellant, v. MOLBY BOILER COMPANY,
INC., Respondent.

Third Department, January 5, 1921.

Sales — action for breach of warranty of house-heating plant —
defense that plant was sold to and warranty given to dealer and not
to plaintiff — interpretation of contract of warranty — right to
repudiate contract for breach of warranty not waived — offer to
return defective plant not necessary where defendant refuses to
receive — verdict against weight of evidence.

In an action to recover for breach of warranty of a steam boiler purchased
by the plaintiff from defendant for the purpose of heating the plaintiff's
house, the defense interposed by the defendant that the warranty was not
made to the plaintiff but to the local dealer, who arranged for the purchase
of the boiler as plaintiff's agent, because, by the rules of the trade, the
defendant could not sell his product to an individual but must sell to a
dealer or contractor, is not maintainable where there is no evidence that
the plaintiff had knowledge or consented to be bound by any such rule.

The interpretation of the specification in the guaranty that " all our ratings
are for direct radiation, figured to heat building to 70° Fahr.," given by
the defendant to the effect that the guaranty was only for the heating of
the surface of the radiation and not for the heating of the building, was
not controlling, and the contract itself and the acts of the parties and other
evidence establishes that such was not the proper interpretation.

The use of the boiler after a test made by the defendant's president, which
showed that it could not heat the house of the plaintiff, did not waive the
plaintiff's right to repudiate the contract, for at the time of the test the
defendant took the position that when the house was fully completed and
furniture in, and the family settled down to normal life, the plant would
do the required work.

It was not necessary for the plaintiff to offer to return the boiler to the
defendant in order to maintain an action for breach of warranty since the
defendant repeatedly refused to receive it if it was returned.

The verdict of the jury in favor of the defendant was against the weight of
the evidence.

APPEAL by the plaintiff, Charles W. Stone, from a judgment
of the Supreme Court in favor of the defendant, entered
in the office of the clerk of the county of Schenectady on the
25th day of February, 1920, upon the verdict of a jury, and
also from an order entered in said clerk's office on the 27th
day of February, 1920, denying plaintiff's motion for a new
trial made upon the minutes.

*Naylon, Robinson & Maynard* [*Daniel Naylon, Jr.*, of counsel], for the appellant.

*Bartholomew Foody, Jr.*, for the respondent.

KILEY, J.:

Plaintiff's motion for a new trial should have been granted; it was denied. The verdict for the defendant dismissing plaintiff's complaint is overwhelmingly against the weight of evidence. The plaintiff, appellant, resides in the town of Niskayuna, Schenectady county. In the summer of 1917 he built a new house near his former residence in said town and county. He employed one J. E. Harbison, a plumbing and heating contractor, of Schenectady, to superintend and oversee the installing of a heating plant in the new house. Appellant selected the " Molby Down Draft Boiler " as the type he wanted; he authorized Harbison to procure such boiler with accessories that made a complete furnace. A heating inspector of Brooklyn prepared the plans for the heating plant. With these plans in his possession, in the month of March, 1917, Harbison went to defendant's place of business in Brooklyn, N. Y., and told its president that he wanted one of its make of boilers to install in the heating plant of plaintiff in the house that was then being constructed. He dealt with the president of the defendant, informing him that he represented the plaintiff and was acting for him. Defendant sold the boiler and accessories to the plaintiff in accordance with the guaranty set forth in the complaint in this action. That there might not be any mistake about the guaranty and its scope, and before the boiler was paid for, and at a time when a test, satisfactory to the plaintiff, could not be made, defendant, through its president, wrote to appellant as follows:

" NEW YORK, 11/27/17.

" W. C. STONE c/o JOHN E. HARBISON,

" Schenectady, N. Y.:

" DEAR SIR.— In connection with the S-1031 Molby Boiler installed in your residence in Schenectady. We are pleased to guarantee the boiler capable of carrying the radiation as specified when the building is furnished and occupied and the apparatus working under normal conditions. We guarantee

the boiler free from defects in manufacture and will replace any parts so found defective. *Our guarantee in the catalogue is to be considered part of this guarantee.*

"Very truly yours,

"MOLBY BOILER CO., INC.

"E. MOLBY."

Attached to the guaranty and a part of it is a schedule marked "Ratings," and provides "*all our ratings are for direct radiation, figured to heat building to 70° Fahr.*" This is important in view of the position taken by the defendant in giving its evidence. This boiler was received in the early fall or late summer of 1917; the first fire was built in September, 1917, and it did not work satisfactorily and the president of the defendant came to the house in 1917 and a test was made by him. It seems to have been mutually agreed that the conditions prevailing were not such that a fair test could be made of the plant; the house was more or less open, windows not in, and the decision on the test was deferred until a later date; plaintiff kept trying to fire the boiler and get up steam. There was not to exceed 2,500 feet of radiation in the house; the boiler in question was rated to have a steam capacity of 4,050 feet. About November 23, 1917, the defendant's president, Mr. Molby, came on again for another test; the house was then practically inclosed; the windows, except two or three in the upper part, were covered with sized factory cloth, the boiler was cleaned out, and coal procured, such as was designated for use in this boiler by the specifications in the guaranty; the test, lasting three or four hours, was made; the plant did not heat the building. The family had not moved in at that time; the interior finish was not completed; floors not all laid, much inside work yet to be done, and again it appears from the record that it was mutually agreed that the conditions were not ideal for the test. This test was made by the defendant's president and without any fault being found by him as to any defect in the heating system or facilities furnished for making it. The defendant taking the position that, when the house was completed and furniture in and family settled down to normal, every day life, the plant would do the work required to heat the house. The workmen

continued to work in the house during that winter. The record is replete with continued effort to get heat out of the furnace and into the system; forty tons of pea coal were purchased and continual attention, in accordance with the printed and oral instruction furnished by the defendant, was given to the work; while it burned coal it did not force heat into the radiation sufficient to furnish moderate heat and warmth. The boiler continued to loose water, the water line did not hold up; the men were afraid to run it; the water line fluctuated rapidly, sometimes disappearing from view; the water line is what is usually called the " gauge," and is the indicator or indicates the correct conditions prevailing or not prevailing, when the boiler is in operation. In the meantime the defendant was calling for payment. It fairly appears from the evidence that in December, 1917, payment was made, with the understanding that such payment should in no way preclude the plaintiff from insisting that the defendant perform on its part according to the terms of the guaranty. The house was not complete until the summer of 1918, when furniture was moved in, and the family commenced occupation. Conditions, both oral and written, were then complete. Fire was started in the boiler and as cold weather came on it did not furnish heat. The evidence, by every reasonable intendment, shows that reasonable, fair and intelligent effort was put forth by the plaintiff to use the boiler .after the fire was lighted in the fall of 1918. He notified the defendant that he had failed; that its boiler would not heat the house, and asked that a representative of the defendant come there and see for himself; that he would have to take the boiler out, and asked for shipping instructions. Defendant replied that it would not accept the boiler, and refused or neglected to give shipping instructions. Plaintiff took the boiler out and installed another and sued defendant for breach of its warranty and for damages with the result aforesaid. Upon the trial defendant found no fault with the system of radiation furnished by plaintiff to go with this boiler. The defense was that the boiler was sold to Harbison, and not to plaintiff; that if it made a guaranty, which it denies, as interpreted by plaintiff, it was made to Harbison; that the boiler was as guaranteed, as it interprets it, and that faulty operation and

fuel was the approximate cause of the failure; that plaintiff waived his right to repudiate the contract by continuing the use of the boiler after he had discovered the imperfections; and finally that plaintiff did not give reasonable notice of the breach. The evidence of both plaintiff and defendant proves that Harbison was acting for the plaintiff, the defendant advancing the information and reason why Harbison did not act as agent that by the rules of the trade it could not sell to an individual, but must sell to a dealer or contractor. I know of no law that permits a union or organization of dealers in building supplies to formulate rules that limit or destroy the law of the land; the jury should have been instructed to that effect; there is no evidence that plaintiff had knowledge or consented to be bound by any such rule. As to the question of guaranty, that is not seriously denied; but defendant contends that it involves only the heating of the surface of the radiation and has nothing to do with the heating of the building in which the boiler is installed. The defendant's president swore, in effect, that it did not concern it whether the plant, equipped with its boiler, heated the building when it was installed or not; that each boiler was given the maximum rating attained under the most favorable conditions of fuel and atmosphere that could be had; and that the purchaser must know that and make due deduction on account of such false representation, or suffer the consequences. There was only one witness sworn for the defendant, viz., its president, and it would seem these last two explanations as to trade rules and his interpretation of the guaranties made is at the foundation of all of this most strange and, under the circumstances, novel evidence. The question is not how defendant interpreted its contract, but how, after reading this clause in the specifications of its guaranty, viz., "All our ratings are for direct radiation *figured* to heat building to 70° Fahr.," an ordinary intelligent purchaser would be justified in interpreting it. The ordinary jury, without minute and detailed instruction, could not be expected to see and consider the force of the limited construction put upon its contract by its witness. That such narrow interpretation by the defendant of its contract with the plaintiff was wrong appears from the contract itself, from the acts

of the parties and from the evidence. As to faulty fuel or operation, the evidence shows, and it is not contradicted, that after the November, 1917, test, competent men and fuel were furnished and the printed instructions of the defendant were followed. As to the use of the boiler after the November, 1917, test waiving plaintiff's right to repudiate the contract, there is a rule, as old as the law of any civilized nation, that when, by acts or statements, one party lulls another into a sense of security as to his existing right, such party cannot then take advantage of such other party, to his detriment, and thus advantage the alluring party, in his own behalf, to destroy those rights. There was but a weak denial, if any, of the evidence given by plaintiff showing the understanding between the parties that any rights plaintiff had were not to be waived by payment or while he was trying to make the boiler operate. Defendant here urges that the plaintiff is confined to the remedy given him under section 150 of the Personal Property Law (as added by Laws of 1911, chap. 571), known as the Sales of Goods Act. That act did little more than codify the case and statute law theretofore existing, and plaintiff's procedure does not offend its provisions. He did offer to return the boiler; defendant refused to receive it if it was returned; he was not called upon to do a useless act after such refusal. Under the circumstances, the holding of the jury that he did not give notice of his recision within a reasonable time was against the weight of evidence. Time alone is not the essence of the force that destroys the effectiveness of a notice or, in this case, the notice. The delay was due to the representations of the defendant; any finding to the contrary is against the weight of evidence as it appears from this record. Under the charge of the court the jury must have found against the plaintiff upon every proposition; the plaintiff did everything he could, working, according to suggestions and instructions of the defendant, to make the boiler a success. I cannot escape the conclusion that this verdict is against the weight of the evidence. I am not unmindful of the fact that we cannot substitute our judgment for that of a jury; we do not do that or intend to, but it is the right of the respondent to know wherein we think the verdict is against the weight of evidence. That is all we are trying to do here.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed and new trial granted, with costs to the appellant to abide the event.