OPINION OF THE COURT
Lucindo Suarez, J.
The issue in this action by plaintiff seller to collect the *724 balance due for delivery of 10,000 gift certificates, claimed to be defective, is whether defendant buyer has made an effective rejection of the goods by placing a stop payment order on its payment check without any other notification.
This court holds that under the facts of this case, a stop payment order on a check was not a seasonable method of notification of nonconforming goods to allow a reasonable time and opportunity to cure, and therefore did not give rise to an effective rejection.
The contract between the parties, manifested by a purchase order, provided for the printing, production and collation of 10,000 gift certificates consisting of various denominations with the Amoco gasoline name and logo thereon, stapled together into booklets of approximately eight certificates each, delivery within two weeks. These certificates were to be given to employees of Montefiore Hospital at the time of their paycheck distribution prior to the Christmas holidays.
The chosen sample differed from the finished product in two respects: the paper was different, and the chosen sample contained a decorative border, whereas the finished product did not. In addition, defendant complained that the logo colors were not within the printed borders of the Amoco logo. The court inspected a book of certificates and found that two of the eight certificates had colors immediately outside the borders: one slightly noticeable, and the other noticeable only upon close inspection.
Defendant, an Amoco gasoline station operator, by its president, Michael DiBarro, testified that the paper of the finished product was of inferior quality to that of the sample. Plaintiff testified that though the paper was in fact different from the one ordered, it was of better and at least of comparable quality. The court noted the difference. Plaintiff testified that the difference in paper and absence of a decorative border in the finished product were agreed upon between the parties and accepted by defendant as manifested by its representative’s "OK” initials on a sample proof, and that the logo colors outside the borders were insignificant minor defects. Mr. DiBarro denied having changed the original order and provided, through his attorney, a handwriting exemplar of his "OK” initials.
This court sitting without a jury may make a comparison between a disputed and authenticated writing (see, e.g., Ibanez v Pfeiffer, 76 Misc 2d 363 [Civ Ct, Queens County 1973]), even *725 when the exemplar is contemporaneously provided by an adverse party on the witness stand. This singular exemplar of two printed letters, "O” and "K”, without more, and in the absence of testimony from a handwriting expert, affords this court a scant basis upon which to make an appropriate ruling.
Plaintiff personally delivered the goods to defendant’s place of business approximately two weeks after the agreed upon delivery date. The uncontradicted testimony by plaintiff’s husband, present when the delivery was made, was substantially that Mr. DiBarro accepted the merchandise, stating he did so even though the delivery was extremely late, because of his immediate need, and paid the balance due by check.
Defendant’s testimony stressed the lateness of the delivery and its urgent need to have had received the merchandise two weeks earlier, as reflected in the purchase order. Yet no credible, adequate or satisfactory reason was given for defendant’s failure to conduct an inspection at the time of delivery in plaintiff’s presence, before payment was made. Upon inspection of the merchandise a day later, defendant put a stop payment order on the check without communicating this fact to seller, nor more importantly, the reasons why. Plaintiff was made aware of defendant’s dissatisfaction only upon her eventual receipt of an insufficient funds notice from her bank, which caused a disruption to her account.
This court need not make a factual determination whether the defendant changed its original order, or whether the delivered goods conformed to the original or a modified agreement. These issues need only be addressed upon a determination of an effective rejection where the time within which to perform has expired, giving rise to an opportunity to remedy by cure a defective tender, requiring a further determination of whether the seller had reasonable grounds to believe the tender of goods would be acceptable. (See, UCC 2-508 [2].)
UCC 2-601 provides that "if the goods * * * fail in any respect to conform to the contract, the buyer may * * * reject the whole”. Although the Uniform Commercial Code states that "exact performance” is required (see, UCC 2-106, Comment 2), some legal scholars have concluded that "substantial” performance is all that is necessary. (See, White and Summers, Uniform Commercial Code § 8-3, at 256 [1972].) New York has not adopted this view, and continues to subscribe to the perfect tender rule, which allows a buyer to reject goods that fail to conform to the contract.
*726 UCC 2-602 (1) provides the manner to accomplish an effective rejection: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.”
An effective rejection requires the buyer to seasonably notify the seller, even though the delivery is of wholly nonconforming goods. In the case at bar, delivery was made two weeks after the date called for in the contract. Defendant buyer paid for the goods by check, inspected them the next day and issued a stop payment order on the check. The time to cure a defective tender, if at all, was immediate. The buyer’s notification of its rejection by a stop payment order on its draft was not seasonable, nor within a reasonable time. (See, UCC 1-204 [2], [3].) Indeed, no reasonable attempt on the part of the buyer to notify the seller was undertaken. (See, UCC 1-201 [25], [26].)
The purpose of notification is to afford the seller an opportunity to cure, or to permit the seller to minimize her losses, such as providing a decrease in the price. This opportunity was never afforded to the seller. The perfect tender rule is limited by seller’s ability to cure, which is conditioned upon the receipt of notice. UCC 2-508 provides:
"(1) Where * * * tender * * * by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.
"(2) Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.”
Defendant’s payment for the goods without inspection on the day of delivery, approximately two weeks after the time called for by the contract, effectively waived the performance provisions of the contract regarding the time of delivery. (See generally, T. W. Oil v Consolidated Edison Co., 57 NY2d 574 [1982].) Therefore, the time within which to perform having expired, subdivision (2) must be referenced. However, subdivision (2) by implication is only applicable if there has been an effective rejection, which is not the case herein.
Defendant’s payment by check for the goods upon their delivery provided the plaintiff with a measure of reliance that *727 same would be acceptable. Defendant’s failure to properly notify plaintiff of the nonconformity effectively prevented plaintiff from an opportunity to cure any defects, within the time limitations of this case, and therefore defendant’s actions cannot be considered to have effectively rejected the goods herein.
Judgment is awarded in favor of plaintiff in the amount of $1,252 representing the balance due and owing under the contract herein with interest from December 7, 1993.