OPINION OF THE COURT
Jack M. Battaglia, J.
Y & N Furniture Inc. is suing Rufus O. Nwabuoku for the *403 purchase price of furniture sold to Mr. Nwabuoku on June 7, 2001. Mr. Nwabuoku has counterclaimed for breach of contract. At the August 20 trial, Y & N appeared by its president and owner, Yuval Sniatkewic; Mr. Sniatkewic testified, as did Y & N’s sales clerk, Richard Ramnarine. Mr. Nwabuoku appeared and testified, as well; he was represented by Vincent Davis, Esq.
The invoice for the purchase describes the furniture, shows the purchase price of $1,500, and indicates the method of payment, i.e., “Beneficial.” The document was signed by Mr. Nwabuoku on June 7, and again to acknowledge receipt of the merchandise in good condition. Because Mr. Nwabuoku told Mr. Ramnarine that he wanted to finance the purchase through “Beneficial,” on the same day, Mr. Nwabuoku also signed two other documents: a completed Beneficial credit application and a retail installment contract, calling for 24 monthly payments totaling $1,903.35, representing the purchase price and a finance charge of $403.35. As will appear below, this retail installment contract was superceded by another.
Pursuant to Y & N’s arrangement with Beneficial, Y & N telephones Beneficial with the information on the customer’s credit application, and receives oral authorization from Beneficial. The authorization establishes Beneficial’s willingness to purchase the retail installment contact. Y & N then delivers the furniture to the customer, and, when the customer indicates acceptance of the furniture to Beneficial, the retail installment contract is assigned to Beneficial and Y & N is paid.
It appears, however, that Mr. Nwabuoku saw an advertisement of Y & N’s offering a credit sale without a finance charge. He returned to Y & N, and, at his request, the June 7 retail installment contract was replaced with another. The second contract still calls for the same monthly payments as the first, but provides further that, if the $1,500 purchase price is paid within 180 days, the finance charge would be waived. The second contract is undated, but was apparently signed after the furniture was delivered, and some weeks after the first contract.
In any event, Mr. Nwabuoku has refused to indicate his acceptance of the furniture to Beneficial, and has told Y & N that he no longer wants the furniture. He alleges no nonconformity with the description of the furniture he ordered; he has apparently simply changed his mind about purchasing the furniture. *404 The result, of course, is that Y & N has not been paid by Beneficial for an assignment of the retail installment contract.
Subject to exceptions that are not applicable here, a buyer of goods may reject them “if the goods or the tender of delivery fail in any respect to conform to the contract.” (UCC 2-601.) If the buyer “rightfully rejects” the goods, the buyer may cancel the contract, and seek a remedy for the breach. (UCC 2-711 [1].) On the other hand, “[i]f the seller has made a tender which in all respects conforms to the contract, the buyer has a positive duty to accept and his [sic] failure to do so constitutes a ‘wrongful rejection’ which gives the seller immediate remedies for breach.” (UCC 2-602, Comment 3; 2-602 [3].)
The buyer’s right, generally, to reject the goods for any nonconformity, even one that is trivial, is known as the “perfect tender rule”; it requires “exact performance by the seller of his [sic] obligations as a condition to his [sic] right to require acceptance [by the buyer].” (UCC 2-106, Comment 2.) Although criticised, and modified by case law in some states, the perfect tender rule is still very much the law of New York. (DeJesus v Cat Auto Tech Corp., 161 Misc 2d 723, 725 [Civ Ct, Bronx County 1994].) However, consistent with the obligation of good faith that is part of every commercial contract (UCC 1-203), the buyer’s rejection of the goods must be made in good faith. (Hubbard v UTZ Quality Foods, 903 F Supp 444, 451 [WD NY 1995]; Clark v Zaid, Inc., 263 Md 127, 282 A2d 483 [1971].)
“Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.” (UCC 2-602 [1].) If the buyer fails to make an effective rejection, the buyer will be deemed to have accepted the goods. (UCC 2-606 [1] [b].) A buyer also accepts the goods by signifying that they conform or will be taken anyway (UCC 2-606 [1] [a]), or by doing an act inconsistent with the seller’s ownership (UCC 2-606 [1] [c]). The buyer who accepts the goods must pay the contract price for them (UCC 2-607 [1]), even if the goods are nonconforming. (Cayuga Press v Lithografiks, Inc., 211 AD2d 908, 910 [3d Dept 1995].) The buyer’s remedy then for any nonconformity is to seek damages for the seller’s breach. (UCC 2-714.)
The buyer who makes a “rightful rejection” of the goods has both a “duty” with respect to the goods and certain options. The duty is “to hold them with reasonable care at the seller’s disposition for a time sufficient to permit the seller to remove them.” (UCC 2-602 [2] [b].) (The merchant buyer may have additional duties [UCC 2-603].) “[I]f the seller gives no instruc *405 tions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller’s account,” and take other actions with respect to the goods, and “[s]uch action is not acceptance or conversion.” (UCC 2-604.) Otherwise, “after rejection any exercise of ownership by the buyer * * * is wrongful as against the seller” (UCC 2-602 [2] [a]), and, if ratified by the seller, would constitute an acceptance (UCC 2-606 [1] [c]).
In this case, the evidence at trial was unclear as to how and when Y & N was notified that Mr. Nwabuoku didn’t want the furniture. It appears that Y & N may not have been made aware that there was some problem with the transaction until some three weeks after delivery, when Beneficial called Mr. Nwabuoku to determine whether he was satisfied with the furniture. It also appears that Mr. Nwabuoku subsequently executed the second retail installment contract, but there was no evidence of any further discussion with Beneficial. These circumstances might allow a conclusion that Mr. Nwabuoku accepted the goods, either by failing to make an effective rejection, or by signifying that he would take them. (UCC 2-606 [1] [a], [b].)
Because the evidence on these circumstances was not as clear as it might have been, the court will assume instead that Mr. Nwabuoku’s refusal to indicate his acceptance of the furniture to Beneficial constituted a rejection of the goods, and that Y & N was “seasonably notifie[d].” (UCC 2-602 [1].) If Mr. Nwabuoku’s rejection had been “rightful,” i.e., because the goods did not conform to the contract, he could hold the goods until Y & N came to get them or gave appropriate instructions. In other words, he would have no obligation to return the furniture to Y & N. (Huntsville Hosp. v Mortara Instrument, 57 F3d 1043, 1046 [11th Cir 1995].)
But it is clear that Mr. Nwabuoku’s rejection of the goods was “wrongful” (and, as will appear below, in bad faith), in that there is not even an allegation that the goods failed to conform to the contract. Under these circumstances, and, again assuming a seasonable rejection, must Mr. Nwabuoku pay for the goods, particularly when he has not returned them to Y & N?
The White and Summers treatise, probably the most respected guide to the Uniform Commercial Code, answers “no” to that question:
“If timely notice is sent and if the buyer lives up to its post rejection obligations under section 2-602 et *406 seq., a rejection — though possibly ‘wrongful’ — would be ‘effective.’ As such it would preclude acceptance of the goods and forecloses a liability for the price under 2-709(l)(a).” (White & Summers, Uniform Commercial Code § 8-3, at 321 [5th ed].)
Their analysis has been accepted by federal courts sitting in New York. (Integrated Circuits Unlimited v Johnson Co., 875 F2d 1040, 1042-1043 [2d Cir 1989], revg on other grounds 691 F Supp 630, 633-634 [ED NY 1988]; Full-Bright Indus. Co. v Lerner Stores, 1995 WL 406140, *16, 1995 US Dist LEXIS 9493, *42 [SD NY, July 10, 1995]; but see Anderson, Uniform Commercial Code § 2-602:69, at 144 [2d ed]; Cochran v Horner, 121 Ga App 297, 298, 173 SE2d 448, 449 [1970].)
These authorities rely in part on a sentence in the legislative history of the Code, but the full context is worth quoting:
“Application of section [2-604] to effective but wrongful rejections. The text of Section 2-604 does not confine buyer’s privileges to rightful rejections. Other sections of the Code contrast ‘rightful’ rejection (§2-711) with ‘wrongful’ rejection (§2-702). A third category is ‘effective’ rejection (§2-606(l)(b)), which occurs when [a] buyer takes action which avoids ‘acceptance’ and resultant liability for the full contract price; buyer may have the power to make an ‘effective’ rejection even though his action is in breach of contract and subjects buyer to liability for damages.
“The caption of Section 2-604 and the Comment indicate that its privileges are to be conferred only in the case of ‘rightful’ rejection. The text of the section is not so limited, and refers generally to ‘rejection’. It is not clear whether the draftsmen considered the advisability of extending the privileges of the section to ‘effective’ but wrongful rejections. Assume buyer makes a wrongful but ‘effective’ rejection so that responsibility for redisposing of the goods remains on seller but seller fails to dispose of the goods and they threaten to deteriorate. If buyer stores or reships or resells the goods, under the Code his action would apparently subject him to liability to the seller based on ‘acceptance’ or ‘conversion’. This result is probably consistent with present law, but fails to fully effectuate the Code’s apparent objective to encourage the salvage of unwanted goods.” (1955 Report of *407 NY Law Rev Commn, vol 1, at 519-520, Study of Uniform Commercial Article 2 — Sales.)
Although the Report suggests that an “effective” but “wrongful” rejection may avoid liability for the price, it also questions whether the buyer in these circumstances is entitled to the “privileges” found in UCC 2-604. The same question necessarily arises with respect to the buyer’s limited duty to hold the goods for the seller to remove them, since that is expressly linked in the text to “goods rightfully rejected.” (UCC 2-602 [2] [b], [c].)
The “present law” that the Report refers to can be found in the now-repealed Sales of Goods Act (Personal Property Law former §§ 131, 150). Former section 131 stated that “where goods are delivered to the buyer, and he refuses to accept them, having the right so to do, he is not bound to return them to the seller, but it is sufficient if he notifies the seller that he refuses to accept them” (emphasis added; see also Portable Mach. Co. v Krakawka, 141 Misc 123,126 [Jefferson County Ct 1931]). The clear implication, of course, is that, when the buyer does not have the right to refuse acceptance, return of the goods is necessary.
Former section 150 gave the buyer certain remedies for breach of warranty, including rescission of the contract upon return of the goods to the seller. Most importantly,
“Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price.” (Personal Property Law former § 150 [4].)
If the seller refused to accept return of the goods, the buyer would then “be deemed to hold the goods as bailee for the seller.” (Personal Property Law former § 150 [5]; see also Stone v Molby Boiler Co., 195 App Div 68, 73 [3d Dept 1921].) Thus, even when the buyer rightfully rescinded the contract — in Code terms, “justifiably revoke[d] acceptance” (UCC 2-711 [1]; 2-608) — the buyer was required to return the goods to the seller in order to escape liability for the price. And, the Law Revision Commission Report, quoted above, suggests the same result under the Code for a rejection that is “effective” even though “wrongful.”
*408 In this case, too, we have a rejection that is not only “wrongful,” but also in bad faith. A wrongful rejection is not necessarily in bad faith; the buyer may honestly believe that the goods fail to conform, but may simply be mistaken. (See UCC 1-201 [19] [defining “good faith” as “honesty in fact in the conduct or transaction concerned”].) But a rejection that does not even purport to rest on an honest assessment of the conformity of the goods has “the effect of destroying or injuring the right of the [seller] to receive the fruits of the contract.” (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995], quoting La Shelle Co. v Armstrong Co., 263 NY 79, 87 [1933].)
At the trial, Mr. Nwabuoku’s counsel made much of the fact that, at the time that Y & N offered Mr. Nwabuoku the finance-charge-free retail installment contract, Y & N had not yet received authorization from Beneficial to make the offer, i.e., Beneficial had not agreed that it would purchase the contract from Y & N. (Y & N disputes this.) This was the only apparent basis for the counterclaim. Although it is true that a buyer may reject if the seller’s tender fails “in any respect” to conform to the contract (UCC 2-601), and the right to reject is not limited to nonconformity of the goods, there is no basis for concluding that Y & N was not fully able and willing to perform. Beneficial did in fact authorize the offer, although perhaps after it was made, and there was no evidence that Y & N as the creditor under the contract would not have performed in any event. When asked at trial whether there was any reason to conclude that Mr. Nwabuoku would not have under the contract the finance arrangement that he testified was the basis of his bargain, neither he nor his counsel could suggest any.
Mr. Nwabuoku signed his name five times, on three separate occasions, in connection with this transaction: on two separate retail installment contracts, on the credit application, and twice on the invoice — when he agreed to purchase the goods and when he received them. The court questioned Mr. Nwabuoku about his ability to understand the documents he signed, and found no evidence of overreaching. (See UCC 2-302.) The court is aware that this is a consumer contract, but a consumer contract is a contract nonetheless.
There is no contention by defendant that Y & N failed to comply with General Business Law § 218-a (1), concerning the posting of refund policies, and no evidence that suggests noncompliance, or that defendant made a demand within the statutory period. The invoice states in bold, conspicuous writ *409 ing, above and adjacent to Mr. Nwabuoku’s two signatures: “No Cash Refund” and “All Sales Are Custom Special Orders and Are Non-Cancelable.” (See May v Devco Shops, 156 Misc 2d 656, 657-658 [Civ Ct, NY County 1993].)
The court concludes, therefore, that a buyer who purports to reject goods under a contract for their sale, when the buyer does not have a good faith belief that the seller’s tender is nonconforming in some respect, and when the buyer has not returned the goods to the seller, shall be considered to have accepted the goods and be liable for payment of the contract price. (UCC 2-709 [1].)
Y & N seeks not only the purchase price of the furniture ($1,500), but the amount of the finance charge that Mr. Nwabuoku is required to pay under the retail installment contract if he does not pay the purchase price within 180 days ($403.35). There is an acceleration clause in the contract, allowing Y & N to demand immediate payment of the entire amount owed, upon default in making any payment; and, in any event, Mr. Nwabuoku has made a positive and unequivocal statement of his intention not to perform, so as to constitute an anticipatory repudiation. (Tenavision, Inc. v Neuman, 45 NY2d 145, 150 [1978]; see also UCC 2-610.)
However, assuming that, under the facts of this case, the retail installment contract can support a cause of action for breach independent of the claim for breach of the contract of sale, Y & N cannot collect finance charges that have not been “earned” by the extension of credit over time. And Y & N would receive no finance charge under the contract if Mr. Nwabuoku paid within 180 days.
The goal is that “the aggrieved party * * * be put in as good a position as if the other party had fully performed.” (UCC 1-106 [1].) That goal appears sufficiently served and “substantial justice” achieved (CCA 1804), by awarding Y & N the purchase price of the furniture, with interest from the date of delivery. The court is aware that, had Mr. Nwabuoku indicated his acceptance of the furniture to Beneficial, presumably Y & N would have been paid something less than the full purchase price by Beneficial. However, Mr. Nwabuoku’s breach cannot allow the court to speculate to his benefit.
Judgment is awarded to Y & N for $1,500, with interest from June 9, 2001, plus disbursements.
On the counterclaim, judgment for Y & N.